**Joyce Donetta SMALL, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 981S254.

Supreme Court of Indiana.

Feb. 11, 1982.

Rehearing Denied April 19, 1982.

Dennis Brinkmeyer, Evansville, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Joyce Donetta Small, was convicted by a jury of murder. Ind.Code § 35–42–1–1 (Burns 1979 Repl.). She was sentenced to a term of forty years in the Department of Correction. In her direct appeal, she presents the following issue for our review: whether the evidence was sufficient to support the jury's conclusion that she was guilty of murder.

When this Court is called upon to review the sufficiency of the evidence, we neither weigh the evidence nor judge the credibility of witnesses. Rather, we examine only the evidence that is favorable to the judgment, together with the inferences which reasonably can be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the conclusion of the trier of fact, it will not be disturbed. *Moon v. State*, (1981) Ind. 419 N.E.2d 740; *Henderson v. State*, (1976) 264 Ind. 334, 343 N.E.2d 776.

Here, the facts most favorable to the judgment reveal that in the afternoon hours of December 13, 1980, the Evansville Fire and Police Departments responded to reports that someone had been shot at 823 Judson Street in Evansville, Indiana. First to arrive at the scene of the shooting was

paramedic Glenn Hodge, Sr., who encountered the defendant outside the residence; according to Hodge, defendant shouted several times, "He shot my momma." Inside the home, Hodge found sixty-eight year old Dora Cheaney lying on the kitchen floor with a bullet wound to her head. Nearby he observed a chrome-plated handgun lying on the floor; he noticed no signs that a struggle had occurred.

Evansville Police Officer Daniel Stock arrived shortly thereafter and engaged defendant in conversation concerning the shooting. Stock testified the defendant, whom he described as "excited," told him the shooting had occurred when an intruder burst into the house, located the pistol which was kept on the premises, and returned to the dining area where he shot the victim and fled. According to Officer Stock, defendant described the intruder as a black male whose head was covered with a ski mask.

Other Evansville Police Officers subsequently arrived. Defendant was requested to submit to hand swabbings to determine whether traces found thereon might match those found on the handgun. Defendant consented to the test, but became "agitated."

Approximately five minutes after the swabbings, defendant became hysterical and, in the presence of police officers, confessed to the crime. Two officers—Marvin Guest and John Althoff—testified they heard defendant volunteer the statement "I did it" to fellow officer Hart. Defendant, who was immediately advised of her *Miranda* rights, again indicated she had shot the victim and was placed in custody.

Defendant does not dispute the veracity of the officers' testimony regarding her confession that she shot the victim. She here asserts—as she did at trial—that the shooting was accidental and that her guilt did not exceed voluntary manslaughter.

Defendant testified at trial and explained that she had resided with the victim on a foster basis since her early childhood. She stated that since her graduation from high school, her continuing residence with the victim had been marked by quarrels. Her quarreling with the victim centered around the victim's frustration and annoyance in the fact defendant had delivered a child out of wedlock. On the morning of the shooting, the two had again quarreled and the victim had hollered and screamed at defendant.

Defendant testified that approximately half an hour after the argument, she went to the back bedroom where, beknownst only to her and the victim, the handgun was located. She stated that she went to the dining room area and stood behind her foster mother, who was seated at the table and was reading. The defendant testified she only intended to "scare" the victim, that she tried to call the victim's name, "but it wouldn't come out." Her testimony of the shooting follows:

Q. "What did you do when you got the gun?"

A. "I just took it and I just stood there, my hands was shaking and I was only trying to scare her and it went off."

Q. "What was she doing at the time?"

A. "She was sitting at the table reading."

Q. "You say the gun just went off?"

A. "Yes."

Q. "Do you recall pulling the trigger?"

A. "No, I don't."

Q. "Do you recall Officer Hart asking you do you know how many times the gun fired and you said, 'No, I couldn't get my finger out of it.'"

A. "Yes."

Q. "What did you do after she was shot?"

A. "I just stood there and I dropped it. I just stood there and then I went and called an ambulance."

The record reveals at least four shots were fired from the handgun.

From this evidence the jury might have concluded the shooting was not intentionally committed; the jury, however, found otherwise. In the factual circumstances before us, we are not at liberty to overturn that decision, for the evidence is sufficient

to support the conclusion the shooting was intentional.

That evidence which supports the conclusion includes the lapse of time between the argument and the shooting, the defendant's calculated possession of the handgun, the unwitting stance of the victim at the moment of the shooting, the fact the victim was shot from behind at a proximity of eighteen inches, and the number of shots fired. It reasonably can be inferred from this evidence that the defendant did intend to shoot the victim. *Brown v. State*, (1981) Ind., 421 N.E.2d 629; *Raspberry v. State*, (1981) Ind., 417 N.E.2d 913; *Chatman v. State*, (1975) 263 Ind. 531, 334 N.E.2d 673. The conclusion of the jury, which had the opportunity to judge the demeanor of the witnesses, will not be disturbed; the jury was not required to believe defendant's version of the events. *Strickland v. State*, (1977) 265 Ind. 664, 359 N.E.2d 244.

For all the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.